# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5679 | **DATE** | 9/10/2003 |
| **CASE TITLE** | G.A. BRAUN INC. vs. SAMUEL L. GIARRATANO, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the defendants' Rule 12(b)(6) motion to dismiss Counts IV and V of the complaint is denied. Status hearing date of 9/24/03 at 9:30a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 11 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 28 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.A. BRAUN, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 5679 |
| ) | Paul E. Plunkett, Senior Judge |
| SAMUEL L. GIARRATANO & ) | |
| THOMAS J. AMES ) | |
| ) | |
| Defendants. ) | |

DOCKETED
SEP 11 2003

## MEMORANDUM OPINION AND ORDER

G.A. Braun, Inc. ("Braun") has brought this diversity suit against defendants Samuel L. Giarratano and Thomas J. Ames for various common law violations and to recover on a promissory note. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the two counts relating to the promissory note. For the reasons set forth below, the motion is denied.

### Facts

The relevant facts as alleged in plaintiff's Second Amended Complaint are as follows. Braun is a New York corporation in the business of manufacturing and selling commercial laundry equipment. (Compl. ¶¶ 1, 9.)[1] Giarratano and Ames are residents of Illinois and both were officers and shareholders of G&A Laundry Systems, Inc. ("G&A Laundry"). (*Id.* ¶¶ 2, 3, 10.) Until the time it ceased doing business in mid-September 2000, G&A Laundry was in the business of distributing

---

[1] All citations to "Compl." and references thereto refer to Braun's Second Amended Complaint.

commercial laundry equipment. (*Id.* ¶¶ 11, 43.) On or about January 1, 1998, Braun and G&A Laundry executed a Distribution Agreement, pursuant to which G&A Laundry became an independent distributor of Braun products to commercial laundries in parts of the Midwest. (*Id.* ¶¶ 13, 14.)

At all times relevant to Braun's claims, Five Star Laundry, Inc. ("Five Star") was in the business of operating a commercial laundry business. (*Id.* ¶ 12.) Both Giarratano and Ames had ownership interests in Five Star. (*Id.* ¶ 16.) However, twice, on May 25 and June 1, 1999, Giarratano prepared and sent correspondence to Stephen Bregande, Braun's president, representing that neither Giarratano nor Ames "ha[s] any ownership interest in Five Star, Inc., a newly formed commercial laundry in Chicago, Illinois." (*Id.* ¶ 15.) Giarratano knew this representation was false. (*Id.* ¶ 16.) In addition, Giarratano and Ames both made oral representations to Braun contemporaneous with the June 1 correspondence that neither had any ownership interest in Five Star. (*Id.* ¶¶ 17, 19.) These oral representations were false and both defendants knew them to be false. (*Id.* ¶¶ 18, 20.)

The Distribution Agreement was amended on or about June 23, 1999. (*Id.* ¶ 21.) The amendment added a confidentiality provision whereby G&A Laundry, as distributor, agreed that it would not disclose certain confidential information (as defined in the amendment) to third parties and would hold in confidence, and not use for its own benefit, customer information.[2] In the amendment, Giarratano represented on behalf of G&A Laundry that neither G&A Laundry nor any of its principals had disclosed any confidential information or customer information to any third

---

[2] "Customer information" is defined in the amendment, but generally includes information acquired from Braun about Braun's products, customers and pricing practices.

party at any time prior to the amendment's execution. (*Id.* ¶ 23.) This representation was false, and Giarratano knew it to be false. (*Id.* ¶ 24.) Giarratano and Ames had disclosed confidential customer information to Five Star prior to June 23, 1999. (*Id.* ¶ 45.)

The representation made in the amendment, along with the representations by Giarratano and Ames that they had no ownership interest in Five Star, were made with the specific intent to induce Braun to continue its distribution contract with G&A Laundry and execute the Distribution Agreement amendment. (*Id.* ¶ 25.) Giarratano and Ames used their positions as principals of G&A Laundry to acquire from Braun sensitive customer information about commercial laundry businesses that competed with Five Star. (*Id.* ¶ 26.) Braun relied on Giarratano's and Ames's representations, and had Braun known that either defendant had any ownership interest in Five Star or that G&A Laundry was using customer information to compete with Braun's other customers, Braun would have terminated the Distribution Agreement immediately. (*Id.* ¶ 27.)

On or about June 1, 2000, Braun and G&A Laundry executed another agreement, a Manufacturer's Representative Agreement ("Representative Agreement"), pursuant to which G&A Laundry agreed to promote and sell products manufactured and sold by Braun. The Representative Agreement was limited to a particular geographic territory. (*Id.* ¶¶ 29, 30.) Again, in conjunction with the execution of the Representative Agreement, Giarratano represented that G&A Laundry did not have any conflict of interest and that neither G&A Laundry nor any of its principals had disclosed confidential or customer information to any third party prior to signing the agreement. In addition, Giarratano agreed that G&A Laundry would not disclose any confidential or customer information to third parties and would use that information only in furtherance of Braun's interests. (*Id.* ¶¶ 31-33.) Braun relied on these representations when entering into the Representative Agreement, and

would not have continued its business relationship with G&A Laundry without them. (*Id.* ¶ 36.) Giarratano's representations were false, and Giarratano knew them to be false. (*Id.* ¶ 34.) Giarratano and Ames had disclosed and intended to continue to disclose confidential and customer information acquired as a result of G&A Laundry's relationship with Braun for the purpose of giving Five Star a competitive edge in the commercial laundry business. (*Id.* ¶ 35.)

On or about June 9, 2000, G&A Laundry executed a promissory note for $300,000 in favor of Braun, an amount already owed by G&A Laundry to Braun. (*Id.* ¶ 37.) The note provided that once G&A Laundry ceased doing business, it would be in default under the note and the debt would be accelerated. (*Id.* ¶ 38.) Braun would not have extended credit to G&A Laundry had it not been for the continuing relationship it had with G&A Laundry or Giarratano's assurances regarding conflicts of interest and ownership interests in commercial laundries. (*Id.* ¶ 39.) After execution of the promissory note, G&A Laundry became indebted to Braun for an additional $7,597.05. G&A Laundry has acknowledged its debt to Braun in the amount of $307,597.05, but never paid the debt. (*Id.* ¶¶ 40, 41.)

Sometime prior to September 20, 2000, G&A Laundry ceased its business operations. The Distribution and Representative Agreements were terminated and G&A Laundry defaulted under the note. (*Id.* ¶ 42.) G&A Laundry filed for bankruptcy and its debts were discharged in bankruptcy proceedings. (Pl.'s Br. Resp. to Mot. to Dismiss at 1.) G&A Laundry did not pay the $307,597.05 it owed to Braun nor did it return to Braun any of the proprietary customer information it acquired through its relationship with Braun. (Compl. ¶ 44.) Giarratano and Ames continue to make confidential customer information available to Five Star. (*Id.* ¶ 45.)

Braun filed suit against Giarratano and Ames for common law unfair competition and deceptive trade practices (Count I), fraud (Count II), misappropriation of trade secrets (Count III), default on the promissory note (Count IV) and attorneys' fees under the promissory note (Count V). Defendants have filed a Rule 12(b)(6) motion to dismiss counts IV and V.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

Braun seeks to hold defendants personally liable on G&A Laundry's promissory note through the doctrine of "piercing the corporate veil." As a general rule, shareholders, officers and directors are not liable for the debts and obligations of their corporations because corporations are separate legal entities. *Stap v. Chicago Aces Tennis Team, Inc.*, 379 N.E.2d 1298, 1301 (Ill. App. Ct. 1978). Under certain circumstances, however, the corporate form will be disregarded and personal liability will be imposed on the real party to the transaction - this is commonly known as "piercing the corporate veil." Under Illinois law, in order to apply the doctrine of "piercing the corporate veil", two requirements must be met:

> [f]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual... no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

*Sea-Land Servs. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) (quoting *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985)) (other citations omitted). The doctrine is essentially equitable in nature and so the conditions under which the corporate form will be disregarded will vary and are dependent on the circumstances of each case. *Stap*, 379 N.E.2d at 1301.

### *Unity of Interest*

To determine whether the first requirement, unity of interest, is met, Illinois courts look at a number of factors, including: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) non-functioning of other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a shareholder; (10) failure to maintain arm's length relationships among related entities; and (11) whether the corporation is a mere facade for the operation of dominant stockholders. *Dimmitt & Owens Fin., Inc. v. Superior Sports Prod., Inc.*, 196 F. Supp. 2d 731, 738 (N.D. Ill. 2002) (citing *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996)).

Defendants argue that Braun's complaint fails to adequately allege facts sufficient to "pierce the corporate veil." Specifically, defendants note that Braun has not alleged that G&A Laundry "failed to issue stock, maintain adequate corporate records, or observe corporate formalities" or that

it was undercapitalized (Def. Giarratano's Mem. Mot. to Dismiss at 1, 3), nor has Braun alleged that the corporation did not maintain a separate bank account or that the promissory note was not intended to be a corporate obligation. (Def. Ames's Mem. Mot to Dismiss at 2-3.) Defendants imply that without these specific allegations, Braun's complaint as to counts IV and V is wanting. We disagree.

Braun alleges that defendants "exercised complete dominion and control over G&A Laundry to further their own personal interest and gain, to the detriment of G&A Laundry, G&A Laundry's contractual obligations, and G.A. Braun." (Compl. ¶ 65.) Braun also alleges that Giarratano and Ames, "as officers and owners of G&A Laundry, abused the corporate form with respect to their operation of G&A Laundry, using its assets as if the assets were their own to further their own personal gain." (*Id.* ¶ 78.) These bare legal conclusions alone probably would not be enough to withstand defendant's motion to dismiss. *See Essex Real Estate Group, Ltd. v. River Works, L.L.C.*, 2002 WL 1822913, at *4-5 (N.D. Ill. Aug. 7, 2002). But the complaint contains other factual allegations relevant to the unity of interest test. Specifically, Braun alleges that in December 1998, defendants pledged all of G&A Laundry's assets to Lakeside Bank of Chicago as collateral for more than $3 million in credit for another entity, Five Star, and that as consideration for the pledge, Giarratano and Ames each received an approximately 25% ownership interest in Five Star. (Compl. ¶¶ 66, 67.) G&A Laundry received no benefit from the pledge of its assets to Lakeside Bank of Chicago. (*Id.* ¶ 68.)

Braun also alleges that G&A Laundry sold to Five Star Braun equipment at G&A Laundry's cost. (*Id.* ¶ 70.) The sale of the equipment to Five Star without any markup resulted in the loss to

it was undercapitalized (Def. Giarratano's Mem. Mot. to Dismiss at 1, 3), nor has Braun alleged that the corporation did not maintain a separate bank account or that the promissory note was not intended to be a corporate obligation. (Def. Ames's Mem. Mot to Dismiss at 2-3.) Defendants imply that without these specific allegations, Braun's complaint as to counts IV and V is wanting. We disagree.

Braun alleges that defendants "exercised complete dominion and control over G&A Laundry to further their own personal interest and gain, to the detriment of G&A Laundry, G&A Laundry's contractual obligations, and G.A. Braun." (Compl. ¶ 65.) Braun also alleges that Giarratano and Ames, "as officers and owners of G&A Laundry, abused the corporate form with respect to their operation of G&A Laundry, using its assets as if the assets were their own to further their own personal gain." (*Id.* ¶ 78.) These bare legal conclusions alone probably would not be enough to withstand defendant's motion to dismiss. *See Essex Real Estate Group, Ltd. v. River Works, L.L.C.*, 2002 WL 1822913, at *4-5 (N.D. Ill. Aug. 7, 2002). But the complaint contains other factual allegations relevant to the unity of interest test. Specifically, Braun alleges that in December 1998, defendants pledged all of G&A Laundry's assets to Lakeside Bank of Chicago as collateral for more than $3 million in credit for another entity, Five Star, and that as consideration for the pledge, Giarratano and Ames each received an approximately 25% ownership interest in Five Star. (Compl. ¶¶ 66, 67.) G&A Laundry received no benefit from the pledge of its assets to Lakeside Bank of Chicago. (*Id.* ¶ 68.)

Braun also alleges that G&A Laundry sold to Five Star Braun equipment at G&A Laundry's cost. (*Id.* ¶ 70.) The sale of the equipment to Five Star without any markup resulted in the loss to

G&A Laundry of over $300,000 in revenue, but resulted in Giarratano's and Ames's receipt of additional ownership interests in Five Star. (*Id.*¶¶ 70, 71.)

In addition, Braun alleges that in November 1998, G&A Laundry (through Giarratano and Ames) entered into a lease agreement for commercial property on West Division street in Chicago. (*Id.*¶ 74.) G&A Laundry had no business reason to rent the commercial property and eventually assigned the lease to Five Star at no cost to Five Star. (*Id.*¶ 76.) G&A Laundry derived no benefit from this assignment; the assignment was done to benefit Giarratano and Ames individually as owners of Five Star. (*Id.*¶ 77.)

While Braun has not touched upon all of the enumerated factors of the unity of interest test listed above, we do not feel it fatal to its claim of individual liability at this stage in the litigation. The fact that G&A Laundry borrowed $300,000 in June 2000 and then ceased business operations a mere three months later could suggest inadequate capitalization. The fact that Giarratano and Ames bound G&A Laundry to various agreements (including a commercial lease for which there was allegedly no legitimate business reason) suggests the nonfunctioning, or nonexistence, of other officers or directors, making it easier to imagine that G&A Laundry was used to benefit Giarratano and Ames personally. The fact that G&A Laundry's assets were pledged for the benefit of defendants' other corporation (and for the benefit of defendants individually) and that no benefit was received by G&A Laundry itself for this pledge speaks to the diversion of assets from the corporation for the personal use by defendants. G&A Laundry's commercial lease, which was transferred to Five Star at no cost[3] suggests a failure to maintain arm's length relationships among related entities, as

---

[3] We find it reasonable to assume that this means that G&A Laundry continued to make lease payments on this property.

does the sale at cost by G&A Laundry to Five Star of Braun equipment. Given the standard[4] employed on a motion to dismiss, we find the complaint alleges facts sufficient to establish a unity of interest between Giarratano/Ames and G&A Laundry.

*Promotion of Injustice*

Braun must also allege facts sufficient to establish that adherence to the fiction of separate identities would sanction a fraud or promote injustice. *Hystro Prod., Inc. v. MNP Corp.*, 18 F.3d 1384, 1390 (7th Cir. 1994). To do this, Braun must show something more than its inability to collect on a debt. There must be "[s]ome element of unfairness, something akin to fraud or deception or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Sea-Land Servs., Inc.*, 941 F.2d at 523 (quoting *Pederson v. Paragon Pool Enters.*, 574 N.E.2d 165, 169 (Ill. App. Ct. 1991)). We find that Braun has made the requisite showing.

In this case, Braun has alleged facts sufficient to demonstrate that defendants may have perpetrated an intentional fraud against Braun. Giarratano and Ames misrepresented their interests in Five Star so that Braun would continue its relationship with G&A Laundry, providing defendants with valuable confidential industry information and G&A Laundry with the extension of $300,000 worth of credit. *See Dimmitt & Owens Fin., Inc.*, 196 F. Supp. 2d at 742 (second prong of "piercing

---

[4] In their memoranda, defendants focus on the specific allegations that Braun *fails* to make in its complaint. To defeat a motion to dismiss, Braun need not have affirmatively alleged all necessary facts in its complaint. Rather, the complaint need only outline the basis of Braun's claim and the Court accepts as true all reasonable inferences to be drawn from Braun's allegations. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791-92 (7th Cir. 1996). The "substantial showing" standard advanced by defendant Giarratano is not appropriate for a motion to dismiss. *See Tome Engenharia E Transpoprtes, Ltd. v. Malki*, 1996 WL 172286, at *6 (N.D. Ill. April 11, 1996) (noting that *at trial* "the party seeking to have the corporate entity disregarded must come forward with a substantial showing that the corporation is really a dummy or a sham for a dominating personality" but that the standard is more relaxed on a motion to dismiss) (emphasis added) (citing *Ted Harrison Oil Co., Inc. v. Dokka*, 617 N.E.2d 898, 901 (Ill. App. Ct. 1993)).

corporate veil" test met where defendant misrepresented status as corporate officer). This kind of deception satisfies the second requirement necessary to "pierce the corporate veil."

## Conclusion

For the reasons stated above, the defendants' Rule 12(b)(6) motion to dismiss Counts IV and V of the complaint is denied.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: 9-10-03